2008 WY 48

**Mark Allen DRAKE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0092.

Supreme Court of Wyoming.

April 22, 2008.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; and Sylvia Lee Hackl *, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Dana J. Lent, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

* Order Granting Counsel to Withdraw entered March 10, 2008.

HILL, Justice.

[¶ 1] Convicted of larceny by bailee, Appellant, Mark Allen Drake (hereafter "Drake"), challenges the imposition of a restitution order. Complicating matters, the restitution was imposed after Drake filed a voluntary Chapter 7 bankruptcy petition and was granted a debt discharge.

[¶ 2] We affirm.

### ISSUE

[¶ 3] Drake states his only issue as follows:

1. Whether the trial court erred in ordering [Drake] to pay restitution, since all amounts owed to Mr. Gulley had been discharged through the bankruptcy proceeding, and the restitution was intended primarily to collect a debt.

### FACTS

[¶ 4] This case arises from a failed Douglas, Wyoming, car dealership. Drake and Dean Gulley (hereafter "Gulley") formed D & M Motors, LLC, in October of 2000, for the purpose of selling used cars. To obtain inventory and establish a sales lot, the business secured loans from First National Bank. The men opened their doors for business in December of 2000, but shortly thereafter, the business fell on hard times. Gulley was seriously injured in a car accident, and, as a result, Drake began to shoulder much of the burden of D & M. The business was ultimately unsuccessful. In December of 2003, First National Bank closed the doors of D & M and in discovering that the inventory was depleted, the bank also discovered that Drake was indeed selling vehicles which the bank had financed, but instead of paying the bank, Drake was keeping the sales proceeds.

[¶ 5] Following this discovery, three legal actions were initiated: a civil action, this criminal action, and a bankruptcy proceeding. The civil proceeding began in March of 2004 when Gulley filed a civil complaint against Drake, alleging causes of action for conversion, negligence, fraud, and conspiracy.[1] In August of 2004, Drake was charged with eight felonies: four counts of defrauding a creditor; one count of larceny by bailee; one count of larceny; and two counts of false swearing. The criminal proceedings were continued while Drake underwent treatment for cancer. Nevertheless, a trial was scheduled for February of 2006. Meanwhile, in July of 2005, Drake filed a voluntary Chapter 7 bankruptcy petition in Colorado. Gulley was listed as a creditor for the amount of $382,650. No creditor objections were filed, and in November of 2005, Drake received a debt discharge.[2]

[¶ 6] Instead of taking the criminal charges to trial, the matter was resolved by plea bargain. In February of 2006, the State filed an amended information charging Drake with five counts: three counts of defrauding a creditor, one count of larceny by bailee, and one count of false swearing. On February 21, 2006, Drake pleaded guilty to larceny by bailee, and the other charges were dismissed. The State requested that a restitution hearing be conducted at a later time. Sentencing proceeded, however, and the court imposed a sentence of two to four years, which was suspended in favor of four years of supervised probation. Later, the court conducted multiple restitution hearings, and, in the end, ordered Drake to pay Gulley restitution in the amount of $38,890.31.

[¶ 7] This appeal followed.

### STANDARD OF REVIEW

[¶ 8] Typically, the standard of review of restitution ordered is confined to a search for procedural error or a clear abuse of discretion. *Penner v. State*, 2003 WY 143, ¶ 7, 78 P.3d 1045, 1047–48 (Wyo.2003). However, there is a distinction between the standard of review of factual challenges to the amount of restitution ordered and challenges to the authority of the court to make a restitution award. Challenges to the factual

---

1. Drake filed an answer to Gulley's complaint and amended complaint, but it appears there has been no further action on the civil case.

2. There is no official record reference to this bankruptcy. However, because the parties both agree that the proceeding occurred and Drake was indeed granted a discharge, we proceed with that fact in mind.

basis of an award of restitution can be waived if the defendant enters into a plea agreement and then fails to object at sentencing. *Penner*, ¶ 7, 78 P.3d at 1047. If the defendant does not object to the amount of restitution ordered by the district court, the reviewing court must review for plain error. If the defendant challenges the authority of the district court to order restitution, then review is under a *de novo* statutory interpretation standard because a court has only that authority to act which is conferred by the subject statute. *Id.*

## DISCUSSION

█ [¶ 9] Drake claims that through his Chapter 7 bankruptcy petition, the District Court of Colorado Bankruptcy Court discharged his obligation to pay criminal restitution in this case. Therefore, he argues that the restitution award is precluded by the bankruptcy discharge. In response, the State submits that the district court acted within its authority in ordering restitution.

[¶ 10] There are inherent differences between the creditors and debtors of bankruptcy proceedings and the victims and defendants of criminal proceedings. These differences are reflected in the goals of the different proceedings. *Cabla v. State*, 6 S.W.3d 543, 547–50 (Tex.Crim.App.1999).

[¶ 11] We have addressed questions about restitution before. In *Abeyta v. State*, 2002 WY 44, ¶ 1, 42 P.3d 1009, 1010–11 (Wyo. 2002), we were asked to interpret the restitution statutes to determine whether or not settlement of civil liability claims extinguished a restitution order imposed against a criminal defendant during sentencing. The district court ruled that a civil liability settlement entered into by Abeyta and two victims of his criminal conduct did not extinguish the restitution order earlier imposed against him during sentencing for his criminal convictions, and the petition was denied. *Id.* We affirmed the district court on appeal reasoning, in part, that, "Uniformly, courts hold that a civil settlement or release does not absolve the defendant of criminal restitution." *Id.* at ¶ 16, 42 P.3d at 1013 (citing *State v. DeAngelis*, 329 N.J.Super. 178, 747 A.2d 289, 294 (N.J.Super.A.D.2000)). We

also held that private parties cannot simply agree to waive the application of a criminal statute. *Id.*

█ [¶ 12] *Abeyta* also gave us the platform to reiterate the four purposes of sentencing: (1) rehabilitation; (2) punishment (specific deterrence and retribution); (3) example to others (general deterrence); and (4) removal from society (protection of the public). "[R]estitution imposed by trial courts under these statutes is a criminal penalty meant to have deterrent and rehabilitative effects." *Id.* at ¶ 15, 42 P.3d at 1013. Generally, a state criminal justice system that imposes restitution during sentencing as a condition of probation and as part of the judgment of conviction is considered a penal sanction rather than civil in nature. *Id.*

█ [¶ 13] In contrast to the aim of the criminal justice system, the goal of the bankruptcy system is not to punish, but to allow the honest debtor to restart his financial life.

In *Kelly [v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)] the Supreme Court described the goal of bankruptcy proceedings. "A bankruptcy proceeding is civil in nature and is intended to relieve an honest and unfortunate debtor of his debts and to permit him to begin his financial life anew." *Kelly*, 479 U.S. at 46, 107 S.Ct. 353. The debtor selects the ·chapter of the Bankruptcy Code according to whether he needs to completely start over or whether he only needs to re-organize his debts. In the former situation, the debtor files for liquidation of his debts, or straight bankruptcy, under Chapter 7 of the Bankruptcy Code. "[Chapter 7's] purpose is to achieve a fair distribution to creditors of whatever non-exempt property the debtor has and to give the individual debtor a fresh start through the discharge in bankruptcy." GEORGE M. TREISTER ET AL, FUNDAMENTALS OF BANKRUPTCY LAW, § 1.04, p. 17 (4th ed.1996). Any person is eligible for a Chapter 7 liquidation. *See id.* § 3.01, at 115.

In contrast, the debtor files for adjustment of his debts under Chapter 13 of the Bankruptcy Code. Chapter 13 is a rehabili-

tation vehicle for an individual with a regular income. The debtor's future earnings are budgeted to pay the creditors in whole or in part, and the debtor gets a fresh start from the discharge granted at the end of the case. *See id.* § 1.04, at 19. A person must have a regular income with unsecured debts of less than $250,000 and secured debts of less than $750,000 to qualify for a Chapter 13 adjustment. *See id.* § 3.01, at 117. An individual debtor or sole proprietor of a small business with a regular income may seek an arrangement with creditors under Chapter 13 in order to continue to operate his or her business. *See* BENJAMIN WEINTRAUB, ET AL, BANKRUPTCY LAW MANUAL ¶ 1.02[2], at 1–5 (3rd ed.1992). The goal of a bankruptcy proceeding is to relieve the debtor of his financial obligations and permit the debtor to start his or her financial life over. The goals and purposes of restitution and bankruptcy differ greatly. *Cabla,* 6 S.W.3d at 546–547 (footnote omitted).

[¶ 14] In reconciling the criminal system with the bankruptcy system, it is commonly recognized that "criminal restitution may generally be imposed despite a previous discharge of the underlying debts in bankruptcy[.]" *Cabla,* 6 S.W.3d at 550 (Meyers, J. concurring). New Mexico, in *State v. Muzio,* 105 N.M. 352, 732 P.2d 879, 882 (App.1987), recognized this very principle. The *Muzio* court acknowledged that "[t]he provisions of the Bankruptcy Act are not so intrusive so as to pardon a bankrupt from the consequences of a criminal offense," and concluded that "[t]he filing by a defendant for bankruptcy or the obtaining of a discharge in bankruptcy does not void a restitution order imposed as a condition of probation under a state criminal judgment." *Id.* at 732 P.2d., 881–82.

[¶ 15] When faced with a similar situation in *Kelly v. Robinson,* 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216, (1986), the United States Supreme Court concluded that a Chapter 7 liquidation of debt proceeding in bankruptcy cannot discharge a restitution obligation, especially when considering the inherent differences between the goals of the bankruptcy system and the goals of a restitution order. In *Kelly,* the question was whether or not a state court restitution order imposed on a criminal defendant as a condition of probation in a larceny case involving the wrongful receipt of welfare benefits constituted a nondischargeable fine or penalty as opposed to compensation for actual pecuniary loss. Because criminal proceedings focus on the state's interests in rehabilitation and punishment, rather than the victim's desire for compensation, the court concluded that restitution orders imposed in criminal cases are nondischargeable penalties payable for the benefit of a governmental unit and are not compensation for actual pecuniary loss.

[¶ 16] Several courts interpreting *Kelly* and 11 U.S.C. § 523(a)(7) have held that an order of criminal restitution payable to a governmental entity is exempt from discharge in bankruptcy. See *In re Thompson,* 16 F.3d 576, 577–78 (4th Cir.1994), *cert. denied,* 512 U.S. 1221, 114 S.Ct. 2709, 129 L.Ed.2d 836 (1994) (holding that any condition a state criminal court imposes as part of a criminal sentence is not dischargeable in bankruptcy); *United States v. Vetter,* 895 F.2d 456, 459 (8th Cir.1990) (stating that criminal restitution orders are exempt from discharge in bankruptcy proceedings); *In re Warfel,* 268 B.R. 205, 213 (9th Cir. BAP 2001) (holding that because the restitution was ordered as part of a state criminal prosecution, it was excepted from discharge in bankruptcy); *Steiger v. Clark County (In re Steiger),* 159 B.R. 907, 913 (9th Cir. BAP 1993) (concluding that order of restitution imposed as part of a criminal sentence was non-dischargeable in bankruptcy).

[¶ 17] Drake seeks to distinguish his case from the likes of *Kelly* and *Cabla.* He directs our attention instead to *In re Brinkman,* 123 B.R. 318, 319 (Bkrtcy.D.Minn. 1991). In *Brinkman,* the issue was whether the bankruptcy court could enjoin a criminal prosecution which had been filed within two weeks of the debtor's bankruptcy petition. The debtor argued that the prosecution was nothing more than "the commencement or continuation of an action … to collect." *Id.* at 321. The court applied the "principal motivation test" to determine whether or not

the purpose of the prosecution was simply to collect a debt.

If it appears that the criminal prosecution has been instituted primarily to vindicate the rights of the public by punishing criminal conduct and to discourage such criminal conduct by others, the bankruptcy court will usually not interfere with the criminal process. However, if it appears that the principal motivation is not punishment or prevention but to recover a dischargeable debt either by a negotiated compromise of the criminal charge or by obtaining an order of restitution after conviction, the bankruptcy court may enjoin criminal prosecution.

*Brinkman,* 123 B.R. at 322 (quoting *In re Kaping,* 13 B.R. 621, 623 (Bkrtcy.D.Or. 1981)).

[¶ 18] Drake encourages us to apply the same test to the facts here. However, we are unable to make that application for two main reasons. "First, the court's authority for [the principal motivation test] was a Bankruptcy Court decision, *In re Kaping,* 13 B.R. 621, 623 (Bkrtcy.D.Or.1981), which predated both the *Kelly v. Robinson* decision in 1986 and the Congressional alterations of the Bankruptcy Code in 1990." *Cabla,* 6 S.W.3d at 549, n. 5. Even in *Kaping,* the bankruptcy court acknowledged that it does not generally issue orders which would interfere with the enforcement of the criminal law. *In re Kaping,* 13 B.R. at 622 (quoting 11 U.S.C. § 362(b)(1)). "The first exception is of criminal proceedings against the debtor. The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 342–3; Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 51–2 [U.S.Code Cong. & Admin.News 1978, p. 5787, 5837-38][.]" *Id.* at 623.

[¶ 19] Secondly, we cannot apply the principal motivation factor test because we are constrained by plain error review, the first prong of which Drake has not satisfied. We recently stated in *Harris v. State,* 2008 WY 23, ¶ 12, 177 P.3d 1166, 1170 (Wyo.2008),

that plain error review requires the appellant to prove the following:

(1) [T]he record is clear as to the alleged error; (2) a clear and unequivocal rule of law was transgressed; and (3) the appellant suffered material prejudice to a substantial right.

After reviewing the record, we are unable to find any error, let alone a "clear and unequivocal rule of law" that was "violated in a clear and obvious way." Drake was criminally charged on October 13, 2004, which was well before he filed for bankruptcy on July 18, 2005. It cannot be said that the pursuit of those criminal charges was simply an effort to collect restitution, as Drake suggests. Instead, Drake admitted to spending company funds for personal use, though he insisted his actions were not improper.

[¶ 20] Restitution was ordered under the court's discretion. See *Frederick v. State,* 2007 WY 27, ¶ 15, 151 P.3d 1136, 1141 (Wyo. 2007) (district court has the authority to impose restitution in a criminal case in accordance with the power afforded by statute). We conclude that Drake's previous Chapter 7 bankruptcy discharge did not discharge the district court's restitution order and, hence, we affirm the district court.